## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMBER GEARY,** | : | **Civil No.  1:20-CV-285** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.    Introduction

The Supreme Court has underscored for us the limited scope of our review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, Amber Geary challenges the legal sufficiency of an Administrative Law Judge's decision denying her application for disability benefits. Geary argues that this decision is not supported by substantial evidence even though she has offered no medical opinion supporting her claim of disability and the only medical opinion on record from a state agency expert concluded that Geary could work notwithstanding her impairments. Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   **Statement of Facts and of the Case**

This is Amber Geary's second social security disability application. Geary's prior application for benefits was denied by an ALJ following a hearing on February 16, 2017. (Tr. 81-92). Following the denial of this prior application, on August 2, 2017, Geary applied for supplemental security income (SSI) pursuant to Title XVI of the Social Security Act, alleging that she had become disabled as of January 1, 2017, due to back pain, a pinched nerve, anxiety, diabetes, and thyroid issues. (Tr. 11). Geary was in her 40's at the time of the alleged onset of her disability, making

her a "younger" individual whose age would generally not affect her ability to adjust to other work (Tr. 17). 20 C.F.R. § 416.963 (c). She had a tenth grade education, and previously had been employed as a waitress, housekeeper, and landscaper, working with her boyfriend, who was employed as a landscaper and contractor. (Tr. 17, 35, 52, 178, 257).

With respect to her primary medical complaint and alleged impairment—degenerative disc disease—the administrative and clinical record was notable in several respects. First, Geary provided no medical opinion from any source opining that her disc disease was disabling. Quite the contrary, the only medical opinion evidence came from a state agency expert, Dr. Karen Sarpolis, who concluded that Geary retained the residual functional capacity to perform work. (Tr. 97-108). Further, Geary's medical history as reflected in her treatment records was illuminating in ways which tended to undermine her disability claim. This treatment history was punctuated by many largely unremarkable findings; a conservative course of treatment which frequently consisted of nothing more than narcotic pain medication; and instances in which Geary declined further treatment while describing an active lifestyle to her caregivers.

For example, throughout 2017, Geary's primary caregiver was Judy Podziewski, a nurse practitioner at the Bons Secours Medical Group. Multiple physical examinations of Geary by Nurse Podziewski between January and October

of 2017 disclosed a normal range of motion, normal strength and no sensory deficits. (Tr. 280, 289, 298, 408-09, 417). Geary treated her lumbar condition during this time in a conservative fashion, by seeking and obtaining narcotic painkillers. (Tr. 274, 283, 299, 408-09, 418). By November 2017 through January 2018, Geary continued to rely upon painkillers to address her lumbar problems but reported increased severity of her symptoms. (Tr. 382-400). Physical examinations confirmed greater back tenderness on Geary's part but also consistently revealed normal strength and no sensory deficit. (Id.)

In March of 2018, Geary sought an initial consultation for management of her chronic low back pain at St. Luke's with St Stanley Ikezi, M.D., an anesthesiologist (Tr. 478, 482). At that time, a physical examination revealed that Geary had a normal lumbar lordosis with paraspinal tenderness bilaterally; that her extension of the lumbar spine was moderately limited due to pain; that she had normal muscle strength other than 4/5 right foot dorsiflexion; and that she also had normal reflexes with no sensory deficits. (Tr. 482). Dr. Ikezi prescribed the painkillers sought by Geary but also indicated that he was reducing her prescription for Percocet to twice per day and, in the near future, would be tapering down her opioid therapy (Tr. 478). In April of 2018, Dr. Ikezi recommended that Geary consider a surgical consultation for her back condition, but she declined to do so. (Tr. 492). Instead, Geary stated that she was willing to try an epidural steroid injection. (Tr. 492).

Although it was recommended once again that Geary consult a neurosurgeon, she refused. (Tr. 493). A physical examination revealed a normal lumbar lordosis with bilateral paraspinal tenderness. (Tr. 496). However, Geary had no sensory deficits, normal muscle strength, and only "minimally limited" range of motion of the spine for flexion and extension and no limitation in rotation.  (Tr. 496). Likewise, an MRI of Geary's lumbar spine performed at that time revealed some degenerative disc disease; chronic spondylolysis with minimal anterior spondylolisthesis; annular bulging with a broad-based superiorly extruded central disc herniation; and moderate bilateral foraminal narrowing with mild compression of both exiting nerves. (Tr. 469). Although a spine surgery consultation was recommended, Geary once again declined this course of treatment. (Tr. 464, 469, 497).

In June 2018, Geary was seen at St. Luke's and reported ongoing low back pain. (Tr. 464). Geary stated that this pain had worsened throughout the day because she had returned to work as a landscaper, but also indicated that she was not interested in moving forward with any injections at that time or with a surgical consultation. (Tr. 464). She further reported that her pain medication was providing her with adequate pain relief but was not lasting throughout the day (Tr. 464). An examination of the lumbar spine revealed a normal lumbar lordosis with bilateral

5

paraspinal tenderness but found no sensory deficits, normal muscle strength and only "minimally limited" range of motion of the spine. (Tr. 467-68).

In the summer of 2018, Geary also sought treatment with Martin Evers, M.D., an internist, at Bon Secours Medical Group, as a new patient. (Tr. 507). At that time, a physical examination revealed no tenderness or muscle spasm of the back. (Tr. 509). Straight leg-raising tests and Geary's reflexes were all normal. (Tr. 509). Dr. Evers' assessment included diabetes mellitus, chronic back pain/degenerative disc disease of the lumbar spine, high blood pressure, hypothyroidism, high cholesterol (Tr. 509). In September 2018, Geary returned to Dr. Evers for a follow-up visit, stating that her back pain was getting worse (Tr. 504). A physical exam disclosed minimal right-sided spinal tenderness and a positive straight leg-raising test on the right, but negative on the left. (Tr. 505). Dr. Evers provided a short-term prescription for additional Percocet and the business card of a neurosurgeon. (Tr. 506).

While Geary was undergoing this fairly conservative treatment for what are described a only mildly to moderately severe symptoms, she was also describing a physically demanding lifestyle to her caregivers. For example, in January 2017, Scott Stevens, M.D., reported that Geary stated, "Back problems, helps [her boyfriend] run his landscaping company" and also noted, "lately she is working on the house a lot, busy." (Tr. 261). Likewise, in April and June 2017, Dr. Stevens also

noted, "Back problems do not prevent her from helping [her boyfriend] run his landscaping company or doing labor on their home pre-sale." (Tr. 257, 259).

None of these treating sources have opined that Geary is disabled. Instead, the only medical opinion of record in this case is the September 2017 opinion of Karen Sarpolis, M.D., a state agency physician, who concluded that Geary retained the ability to perform light work, including lifting/carrying up to 20 pounds frequently, and sitting, and standing/walking about 6 hours each in an 8-hour workday and found that Geary could frequently balance, stoop, kneel, and crouch, but only occasionally climb and crawl. (Tr. 103).

It is against this backdrop that a hearing was held on this disability application on October 28, 2018, where Geary appeared and testified along with a Vocational Expert. (Tr. 28-57). Following this hearing, on January 24, 2019, the ALJ issued a decision denying this application for benefits, finding that Geary remained capable of performing a limited range of sedentary jobs in the national economy. (Tr. 9-18). In that decision, the ALJ first concluded that Geary had not engaged in any substantial gainful activity since the date of her August 2017 application. (Tr. 11). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Geary's degenerative disc disease was a severe impairment. (Id.) At Step 3, the ALJ determined that this impairment did not meet or medically equal the severity of one of the listed impairments. (Tr. 12-13).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), which considered all of Geary's limitations from her impairments and found that he could perform a range of sedentary work with some restrictions. (Tr. 13-17). In making this RFC determination, the ALJ considered all of the medical and opinion evidence in this case, as well as Geary's self-reported activities of daily living and the report of her boyfriend. (Id.) This analysis noted that Geary's relatively conservative course of treatment and fairly benign diagnostic tests and clinical findings, as well as the sole medical opinion, the opinion of the state agency expert, Dr. Sarpolis, all supported a finding that Geary could perform some sedentary work in the national economy. The ALJ also acknowledged that Geary's activities of daily living and conservative medical treatment suggested that she retained the ability to perform some sedentary work. (Id.)

Having arrived at this RFC assessment, the ALJ found that there were a number of sedentary jobs in the national economy that Geary could perform. (Tr. 17-18).  Based upon these findings, the ALJ held Geary did not meet the stringent standard for disability set by the Social Security Act and denied this disability claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Geary contends that this decision is not supported by substantial evidence even though she has offered no medical opinion supporting her claim of disability and the only medical opinion on record

from a state agency expert concluded that Geary could work notwithstanding her impairments. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, we will affirm the decision of the Commissioner.

## III.  <u>Discussion</u>

### A.  <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. <u>See</u> 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application

of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2014)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather, our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are

> insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id.</u> at 120; <u>see</u> Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.   <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under

Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.   20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e),  404.1545(a)(1),  416.920(e),  416.945(a)(1).   In  making  this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize

the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018

WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  <u>Id</u>. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis

for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.   Legal Benchmarks for the ALJ's Assessment of Medical Opinions

In this case, Geary filed her second application for disability benefits in August of 2017, shortly after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. The regulations which pre-dated March of 2017 also set standards for the evaluation of medical evidence and defined medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the plaintiff's] impairments, including [the plaintiff's] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairments, and [the plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Regardless of its source, the ALJ was required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c).

In deciding what weight to accord to competing medical opinions and evidence, the ALJ was guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide[d] progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR

96-6p, 1996 WL 374180 at *2. Treating sources had the closest ties to the claimant, and therefore their opinions were generally entitled to more weight. See 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. § 404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion was entitled to controlling weight, the Commissioner's regulations directed the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented

by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an

adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

There is a longstanding corollary to these principles governing assessment of medical opinion evidence. In instances such as this case, where a plaintiff is unable to muster any medical opinion support for her claim of disability, courts frequently decline invitations to second-guess disability determinations. See, e.g., Falcone v. Berryhill, No. 3:16-CV-1705, 2017 WL 7222358, at *2 (M.D. Pa. Nov. 29, 2017), report and recommendation adopted, No. 3:16CV1705, 2018 WL 646489 (M.D. Pa. Jan. 31, 2018); Patton v. Berryhill, No. 3:16-CV-2533, 2017 WL 4875286, at *1 (M.D. Pa. Oct. 12, 2017), report and recommendation adopted in part, No. 3:16-CV-2533, 2017 WL 4867396 (M.D. Pa. Oct. 27, 2017). These decisions rest upon the commonsense notion that in cases where all of the medical opinion evidence rebuts any claim of disability, an ALJ's denial of disability benefits is often supported by substantial evidence.

It is against these benchmarks that we assess the instant social security appeal.

### D.   The ALJ's Decision in this Case Will Be Affirmed.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but

more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence," <u>Pierce</u>, 487 U.S. at 565, but rather "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " <u>Biestek</u>, 139 S. Ct. at 1154. Judged against these deferential standards of review, we find that substantial evidence supported the ALJ's decision that Geary was not entirely disabled.

That evidence which supported the denial of this claim included the sole medical opinion in this case, the opinion of the state agency expert, Dr. Sarpolis, who found that Geary was not totally disabled. In the absence of any other countervailing medical opinion evidence, the ALJ was entirely justified in relying upon this state agency expert opinion. These state agency doctors are experts in the Social Security disability programs and it is well settled that their views merit significant consideration. <u>Chandler</u>, 667 F.3d at 361. Moreover, Dr. Sarpolis' opinion is entirely consistent with both the clinical record and Geary's self-reported activities of daily living, Therefore the ALJ did not err in finding this opinion persuasive.

Further, Geary's self-reported activities of daily living, which included occasional work as a landscaper, undermined her claim of total disability. "[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional

capacity." <u>Cunningham v. Comm'r of Soc. Sec.</u>, 507 F. App'x 111, 118 (3d Cir. 2012) <u>citing Burns v. Barnhart</u>, 312 F.3d 113, 129–30 (3d Cir.2002). Here, Geary's activities of daily living were inconsistent with her claim of total disability, a fact the ALJ properly considered when assessing this claim.

Finally, in evaluating a disability claim, it is the province of the ALJ to consider whether the claimant's treatment records support an assertion of total disability. <u>Stancavage v. Saul</u>, 469 F. Supp. 3d 311, 333 (M.D. Pa. 2020). Here, Geary's treatment history, which was frequently marked by relatively benign clinical findings and conservative treatment, simply did not support the assertion that Geary's degenerative disc disease was completely disabling. Thus, there was no error in the ALJ's evaluation of this evidence, which was more than adequate to support the finding that Geary was not disabled but could perform sedentary work.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas,</u>

<u>Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.   **<u>Conclusion</u>**

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

June  15, 2021